AMERICAN FEDERATION OF GOVERNMENT EMPLOYEES, AFL–CIO, COUNCIL 33; American Federation of Government Employees, AFL–CIO, L–3584; Benita Mays, Plaintiffs,

v.

Richard THORNBURGH, Attorney General of the United States; J. Michael Quinlan, Director, Bureau of Prisons; Rob Roberts, Warden, Pleasanton Federal Correctional Institution, Defendants.

No. C–88–1419 SAW.

United States District Court, N.D. California.

Sept. 11, 1989.

Cliff Palefsky, McGuinn, Hillsman & Palefsky, San Francisco, Cal., Joe Goldberg, AFGE Staff Counsel, Washington, D.C., for plaintiffs.

U.S. Attorney's Office, George Christopher Stoll, San Francisco, Cal., Mary E. Goetten, Richard G. Lepley, Dept. of Justice Attys., Civ. Div., Washington, D.C., for defendants.

### ORDER REAFFIRMING FINDINGS OF FACT, CONCLUSIONS OF LAW, AND PRELIMINARY INJUNCTION

WEIGEL, District Judge.

In light of the U.S. Supreme Court's decisions in *Skinner v. Railway Labor Executives' Ass'n*, —— U.S. ——, 109 S.Ct. 1402, 103 L.Ed.2d 639 (1989) and *National Treasury Employees Union v. Von Raab*, —— U.S. ——, 109 S.Ct. 1384, 103 L.Ed.2d 685 (1989), the Court has been called upon to reconsider *American Federation of Government Employees, AFL–CIO, Council 33 v. Meese*, 688 F.Supp. 547 (N.D.Cal. 1988). The Court now reaffirms its Findings of Fact, Conclusions of Law, and Order Granting Preliminary Injunction of June 16, 1988.

In *Skinner*, the Supreme Court addressed Federal Railroad Administration regulations authorizing urine tests of railroad employees involved in train accidents or found violating certain specific safety rules. The Court held that the high governmental interest in rail transportation safety, the need for information on the causes of train accidents, the demonstrated causal link between drug use and past train accidents, and the deterrent effect on drug use in safety-sensitive positions justified the narrowly defined testing program. *Skinner*, 109 S.Ct. at 1418–21.

*Von Raab* also involved a testing program targeted at specific classes of employees. There, the U.S. Customs Service required drug tests by employees seeking promotion or transfer to a position 1) involving the direct interdiction of drugs, 2) requiring the employee to carry firearms, or 3) requiring the employee to handle

"classified" material which might fall into the hands of drug smugglers if accessible to employees susceptible to blackmail. Based on the compelling governmental interest in "preventing the promotion of drug users to positions where they might endanger the integrity of our Nation's borders or the life of the citizenry," and a diminished expectation of privacy because of the special physical and ethical demands of the jobs, the Court upheld testing for the first two categories of employees. *Von Raab*, 109 S.Ct. at 1397. The Court, however, refused to assess the reasonableness of the drug testing program for the third category because the record was insufficient to determine whether the category was more broadly defined than necessary. *Id.*

Unlike the testing schemes approved in *Skinner* and *Von Raab*, the urinalysis testing program proposed by the Federal Bureau of Prisons, at issue in this case, calls for mandatory, random testing of *all* Bureau employees *regardless of job function. See American Federation of Government Employees*, 688 F.Supp. at 552. The Bureau's asserted justifications for implementation of mass urinalysis testing are not supported by objective evidence, as in *Skinner*, nor targeted at employees who perform specific job functions justifying the high level of governmental intrusion, as in *Skinner* and *Von Raab. Id.* at 553–55.[1] The Bureau simply has not demonstrated the special need for its indiscriminate testing program, as required by the Supreme Court, that "in certain limited circumstances ... is sufficiently compelling to justify the intrusions on privacy entailed by conducting such searches without any measure of individualized suspicion." *Von Raab*, 109 S.Ct. at 1392; *see also Skinner*, 109 S.Ct. at 1421–22.

Accordingly,

IT IS HEREBY ORDERED that the Court's FINDINGS OF FACT, CONCLU-SIONS OF LAW, AND ORDER GRANTING PRELIMINARY INJUNCTION of June 16, 1988 is REAFFIRMED.

---

1. The Court also notes that the level of intrusiveness of the testing proposed by the Bureau is far higher than the intrusiveness of the testing programs approved in *Skinner* and *Von Raab*. The Bureau's scheme authorizes random tests on two hours notice and direct visual observation of the employee while urinating. *See* 688 F.Supp. at 551–52. Under the regulations at issue in *Von Raab*, specimen collection is scheduled in advance, and there is no visual observation of the urination process. *Von Raab*, 109 S.Ct. at 1394 n. 2. In *Skinner*, testing is only authorized upon the occurrence of a specific triggering event. *Skinner*, 109 S.Ct. at 1416 n. 6.